UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No. 1:05-CR-96

ERIC YVHONNE WILLIAMS,          HON. GORDON J. QUIST
NORMAN EDDIE, DEMOND
ATKINS, XAVIER JACKSON,

    Defendants.
_____/

## OPINION

Defendant, Eric Yvhonne Williams ("Williams"), has been charged in a multi-count indictment with various drug offenses. Williams filed a motion to suppress on March 6, 2006, in which he requested an order suppressing statements that he made to law enforcement agents in October and November 2005. Williams also requested that the Court suppress evidence of certain telephone conversations between Co-Defendant Antwan T. Mims and Williams or others. The statements were made on October 10, 11, and 20, 2005, and November 22, 2005. The calls were made by Mims from the Berrien County jail in April 2005. The Court held an evidentiary hearing and heard oral argument on the motion on May 15, 2006. At that time, the parties informed the Court that the Government had agreed not to introduce the October 11, 2005, October 20, 2005, and November 22, 2005, statements in its case-in-chief and that the only statement at issue was Williams' October 10, 2005, statement to Detective Robert Boyce. For the reasons set forth below, the Court will deny Williams' motion to suppress that statement.

**Findings of Fact**

On October 10, 2005, Deputy Hopkins of the Berrien County Narcotics Unit and Officer Collins of the Benton Harbor Police Department arranged for a confidential informant to make a controlled purchase of heroin from Williams. After the delivery was made, the officers attempted to detain Williams but he fled on foot into an apartment complex located at 777 E. Napier Ave. in Benton Township. Deputy Hopkins followed Williams into apartment F-2 and apprehended him. While in the apartment, Deputy Hopkins observed in plain view narcotics packaging material, a digital scale, and a small amount of heroin residue. Deputy Hopkins then relayed the information to Sergeant Robert Boyce of the Berrien County Narcotics Unit and requested that he obtain a search warrant for apartment unit F-2.

Sergeant Boyce obtained a search warrant and arrived at the scene at approximately 4:50 p.m. After assisting in the search of the apartment, Sergeant Boyce interviewed Williams' former girlfriend, Tashema Yasmine Domena, at approximately 5:25 p.m. in the bathroom at the residence. Domena told Sergeant Boyce that she lived at the apartment with her two children and that Williams used to be her boyfriend but at the present time they were friends. She also told Sergeant Boyce that Williams had spent the previous night at her apartment and that he had some clothes at the apartment. She denied knowing anything about illegal drugs inside her apartment.

Sergeant Boyce then interviewed Williams at approximately 5:50 p.m. The interview was conducted inside a squad car in the parking lot of the apartment complex.[1] Sergeant Boyce sat in the

---

[1] Sergeant Boyce testified that his incident report, which stated that he conducted the interview outside of a squad car in the parking lot, was incorrect and that the interview actually occurred inside the squad car. Sergeant Boyce explained that he interviewed Williams inside the squad car because Williams was already in custody inside of the car. Sergeant Boyce also said that he conducted the interview inside rather than outside of the car because several people had gathered in the parking lot and he did not want anyone to influence Williams during the interview.

front seat and Williams sat in the back seat, in handcuffs. Prior to interviewing Williams, Sergeant Boyce advised Williams of his *Miranda* rights. Williams told Sergeant Boyce that he understood his rights and that he wished to speak with Sergeant Boyce. During the interview, Williams told Sergeant Boyce that the digital scale in the apartment belonged to him, that he had been selling heroin over the past two-to-three months to make a little extra money, and that he had sold the heroin to the informant earlier in the day. Following the interview, Deputy Hopkins escorted Williams into the apartment to allow him to use the bathroom and then immediately escorted him back to the squad car. As Deputy Hopkins was taking Williams to the car, Williams' mother asked if she could speak with Williams, and Deputy Hopkins told her that he would give her a minute to do so. After Williams was in the car, his mother went to the car and spoke to him. After they finished speaking, Deputy Hopkins left with Williams in the squad car.

## Conclusions of Law

**I.      October 10, 2005, Statement**

"*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966), requires that, before a defendant is subjected to custodial interrogation, he must be told of his right to remain silent, his right to an attorney, and the possible use of any statement he makes as evidence against him." *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997). A defendant may waive his *Miranda* rights, but the waiver must be voluntary, knowing, and intelligent, based on the totality of the circumstances. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986). The government has the burden of proving the voluntariness of the waiver by a preponderance of the evidence. *See Seymour v. Walker*, 224 F.3d 542, 554 (6th Cir. 2000).

The questions presented in the instant motion are whether Sergeant Boyce advised Williams of his *Miranda* rights and whether there was a valid waiver of those rights.  At the evidentiary hearing, Williams' counsel informed the Court that Williams' position is that he did not make any statement to Sergeant Boyce.  As the Court understands it, Williams also argues that, if he did make a statement, he was not informed of his rights.  While Williams is free to dispute at trial whether he actually made a statement to Sergeant Boyce, whether Williams was advised of and waived his rights are the only pertinent issues before the Court in this suppression motion.

Based upon Sergeant Boyce's testimony, which was largely undisputed, the Court concludes that Sergeant Boyce advised Williams of his *Miranda* rights, that Williams waived his rights, and that the waiver was voluntary, knowing, and intelligent.  Sergeant Boyce testified that he read Williams his rights, that Williams said that he understood them and wished to be interviewed, that he did not use force or threats to induce the waiver, and that Williams appeared lucid.

In an effort to demonstrate that he did not make any statements to Sergeant Boyce, Williams presented the testimonies of Lester Love and Thera Love.  Neither Mr. Love nor Mrs. Love gave testimony that necessarily contradicted, or was inconsistent with, Sergeant Boyce's testimony.  In fact, their accounts were consistent with that of Sergeant Boyce on the important points.  They both testified that when they arrived at the scene, Williams was not already in a police car, and they first saw Williams as an officer was leading him from the apartment to a police car. They both said that Williams' mother asked the officer if she could speak with her son, that she did speak to him after the officer placed him in the car, and that shortly thereafter, the police car left.  This testimony was consistent with what Sergeant Boyce said occurred after he finished interviewing Williams in the police car: Williams was taken inside to use the bathroom and brought back out to the car, he spoke

4

to his mother, and then was transported from the scene. It is thus apparent that the Loves witnessed only those events that occurred after Sergeant Boyce interviewed Williams. Accordingly, there is no basis to suppress Williams' statement to Sergeant Boyce.

## II.  Telephone Calls by Co-Defendant Mims

As noted above, Williams requested in his motion that the Court suppress evidence of certain telephone conversations that Co-Defendant Antwan T. Mims had with or about Williams, while Mims was being held in the Berrien County jail, on the basis that the Government failed to provide Williams with transcripts of the alleged conversations. At the hearing, the Government represented that it was providing a copy of the audio taped telephone calls to Williams' counsel. Because Williams had access to this evidence for at least one month prior to trial, Williams has had adequate time to review it. The Court thus finds no reason to exclude it.

## Conclusion

For the foregoing reasons, the Court will deny Williams' motion to suppress.

An Order consistent with this Opinion will be entered.


Dated: June 19, 2006                                      /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE